UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GATX CORPORATION,                                  :

                                                   :

                    Plaintiff,                     :        13 Civ. 4400 (JGK) (GWG)

                                                   :

         -against-                                 :        REPORT AND
                                                   :        RECOMMENDATION
AERO JET CORPORATE,                                :

                                                   :

                    Defendant.                     :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge:**

        Plaintiff GATX Corporation ("GATX") brings this action against defendant Aero Jet

Corporate ("Aero") to recover damages and costs stemming from Aero's breach of an agreement

for the lease of an aircraft.  A default has already been entered against Aero.  The only remaining

issue is the amount of damages GATX should be awarded.

I.      BACKGROUND

        GATX filed its complaint against Aero on June 25, 2013, see Complaint, filed June 25,

2013 (Docket # 1), and Aero filed an answer on September 13, 2013, see Answer, filed Sept. 13,

2013 (Docket # 18).  On October 18, 2013, GATX filed an amended complaint, see Amended

Complaint, filed Oct. 18, 2013 (Docket # 32) ("Am. Compl."), which was served on Aero on

October 28, 2013, see Affidavit of Service of Summons and Amended Complaint, filed Dec. 24,

2013 (Docket # 46).  Aero failed to respond to the amended complaint, and on January 10, 2014,

GATX obtained a certificate of default.  See Clerk's Certificate, filed Jan. 10, 2014 (Docket

# 48).  On February 18, 2014, Judge Koeltl granted GATX's motion for a default judgment

pursuant to Fed. R. Civ. P. Rule 55(b), see Order, filed Feb. 18, 2014 (Docket # 53), and referred

the matter to the undersigned for an inquest, <u>see</u> Order of Reference, filed Feb. 18, 2014 (Docket # 54).

On February 20, 2014, this Court issued an order directing GATX to submit proposed findings of fact and conclusions of law with supporting documentation as to its request for damages and other relief.  <u>See</u> Scheduling Order for Damages Inquest, dated Feb. 20, 2014 (Docket # 55).  The Order gave Aero until May 7, 2014, to oppose GATX's submissions.  <u>Id.</u> ¶ 2.  The Order also notified the parties that the Court would conduct the inquest based upon the written submissions of the parties unless a party sought an evidentiary hearing.  <u>Id.</u> ¶ 3.  A copy of the Order was mailed to Aero at its business address.

Because the default judgment entered in this case establishes Aero's liability, <u>see</u> <u>Bambu Sales, Inc. v. Ozak Trading Inc.</u>, 58 F.3d 849, 854 (2d Cir. 1995) (citation omitted), the only remaining issue is whether GATX has supplied adequate support for any relief it seeks, <u>see</u> <u>Kuruwa v. Meyers</u>, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011) <u>aff'd</u>, 512 F. App'x 45 (2d Cir. 2013); <u>accord</u> <u>GAKM Res. LLC v. Jaylyn Sales Inc.</u>, 2009 WL 2150891, at *2 (S.D.N.Y. July 20, 2009) ("A default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability . . . and the sole issue that remains before the court is whether the plaintiff has provided adequate support for the relief it seeks.") (citations omitted).  The Second Circuit has held that an inquest into damages may be held on the basis of documentary evidence alone "as long as [the court has] ensured that there was a basis for the damages specified in [the] default judgment."  <u>Fustok v. ContiCommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989); <u>accord</u> <u>Action S.A. v. Marc Rich & Co., Inc.</u>, 951 F.2d 504, 508 (2d Cir. 1991).

Neither party has requested an evidentiary hearing, and Aero has not made any submission to the Court.  GATX's submissions include four declarations and documentary

evidence.[1]  These submissions seek damages based on Aero's breach of the lease agreement, prejudgment interest, attorney's fees, and costs.  Because these submissions provide a basis for an award of damages, no hearing is required.

II.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

In light of Aero's default, GATX's properly-pleaded allegations, except those related to damages, are accepted as true.  See, e.g., City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (citing Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor.") (citation omitted).  The following findings of fact and conclusions of law are based on the allegations in GATX's amended complaint regarding liability and the admissible evidence regarding damages contained in its submissions.

A.    Facts Relating to Liability

GATX is a New York corporation, which has its principal place of business in Chicago, Illinois.  Am. Compl. ¶ 2.  Aero is a French corporation, which has its principal place of business

---

[1]  See Plaintiff's Proposed Findings of Fact and Conclusions of Law Concerning Damages in Connection with the Default of Defendant, filed Apr. 8, 2014 (Docket # 62) ("Proposed Findings of Fact and Conclusions of Law"); Declaration of Eric Livingston Concerning GATX's Damages in Connection with the Default of Defendant, filed Apr. 8, 2014 (Docket # 63) ("Livingston Decl."); Declaration of John Gekas Concerning GATX's Damages in Connection with the Default of Defendant, filed Apr. 8, 2014 (Docket # 64) ("Gekas Decl."); Declaration of Andre K. Cizmarik Concerning GATX's Damages in Connection with the Default of Defendant, filed Apr. 8, 2014 (Docket # 65) ("Cizmarik Decl."); Declaration of Kami Haeri Concerning GATX's Damages in Connection with the Default of Defendant, filed Apr. 8, 2014 (Docket # 66) ("Haeri Decl."); Letter from John Gekas, filed July 10, 2014 (Docket # 69).

in Dommartin, France.  Id. ¶ 3.  On July 4, 2011, GATX and Aero executed an agreement (the "Agreement") by which GATX agreed to lease to Aero a Dassault Falcon 50 Aircraft (the "Aircraft") in exchange for a monthly rent of $25,000 plus additional sums as specified in the Agreement.  See id. ¶¶ 1, 7-8, 10.  On July 8, 2011, GATX delivered and Aero accepted the Aircraft.  Id. ¶ 9.  Beginning in December 2012, Aero ceased paying rent to GATX, id. ¶ 11, which under Paragraph 15 of the Agreement constituted an "Event of Default" giving GATX the "right to terminate the Lease and repossess the Aircraft," id. ¶ 12.  Accordingly, GATX repossessed the Aircraft from Aero at Le Bourget Airport outside Paris, France.  See id. ¶ 13.  In repossessing the aircraft, GATX incurred various costs including those expended on "certain necessary repairs" and "all outstanding bills . . . for such items as storage and prior repairs."  See id. ¶ 14.  When GATX brought the Aircraft back to the United States, it discovered that further repairs were necessary because the Aircraft had apparently been damaged by a lightning strike in July 2012.  See id. ¶¶ 16-18.  Although it was contractually required to do so, Aero neither reported the lightning strike to GATX nor made the necessary repairs to the damage caused by the lightning.  See id. ¶¶ 19-20.  Aero's failure to make these repairs and to return the Aircraft to GATX in the "requisite condition" constituted an additional breach of the Agreement.  Id. ¶ 20.

     B.    Claimed Damages

GATX seeks to recover from Aero damages in the amount of $658,393.39 plus attorney's fees and costs.  See Proposed Findings of Fact and Conclusions of Law ¶¶ 21-24.  GATX contends that the total amount of damages consists of: "a. $130,980.00 for outstanding payments owed under the Lease for unpaid rent, airframe reserves, and CAMP maintenance costs; b. $353,688.27 for repossession and repair costs to the Aircraft; c. $81,840.00 pursuant to the return provision of the Lease; and d. $140,400.00 for the reduced sales price of the Aircraft."  Id.

¶ 21.  GATX has subtracted from this amount $48,514.88 "for GATX's receipt of an insurance settlement in connection with damage resulting from the apparent lightning strike."  Id.  GATX also requests that the Court grant it "prejudgment interest pursuant to CPLR § 5001, et seq. starting on June 1, 2013 as the date on which Aero Jet's breach was ascertained in full by GATX," id. ¶ 22, as well as post-judgment interest pursuant to 28 U.S.C. § 1961(a), id. ¶ 36.  GATX claims "$43,855.70 in litigation costs, expenses, and attorneys' fees" in connection with this lawsuit.  Id. ¶ 24.

### 1.   Compensatory Damages

To recover damages for breach of contract under New York law, a plaintiff must prove "(1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages."  Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 83 A.D.3d 804, 806 (2d Dep't 2011) (citations omitted).[2]

GATX has demonstrated each element for its breach of contract claim here.  First, it has produced a copy of the "Aircraft Lease Agreement" which was signed by both parties on July 4, 2011.  See Aircraft Lease Agreement, dated July 4, 2011 (annexed as Ex. 1 to Livingston Decl.) ("Agreement").  Second, GATX performed its obligations under the Agreement by delivering the Aircraft to Aero for the lease period.  See Am. Compl. ¶ 9; see also id. ¶ 25 ("GATX performed all of its obligations under the Lease.").

Third, GATX has shown that Aero breached the Agreement by ceasing its rental payments in December 2012.  See Am. Compl. ¶ 11; Livingston Decl. ¶ 6; Agreement § 4.1(a)

---

[2] We apply New York law because the Agreement provides that "[t]his lease and any claim, controversy, or dispute arising under or related to this lease . . . shall in all respects be governed by, and construed in accordance with, the law of New York."  Agreement § 17.1.

("Commencing on the Basic Rent Payment Date and on the same day of each month of the Term thereafter, Lessee shall pay Lessor rent for the Aircraft, each such payments to be in the amount specified in Exhibit C.").  Aero's failure to timely pay rent constituted an "Event of Default" under Section 15(a) of the Agreement.  See Agreement § 15(a) ("The following events shall constitute Events of Default . . . and shall be a condition which Lessor is entitled to treat as a repudiation of the Lease by Lessee: Lessee shall fail to make any payment of Basic Rent . . . within three Business Days of the date the same is due and payable hereunder . . . .").  Additionally, GATX has demonstrated that Aero breached the Agreement by failing to properly maintain the Aircraft.  See Agreement § 6.6(b) ("Lessee, at its own cost and expense, shall . . . [s]ervice, repair, maintain, overhaul and test . . . so as to keep such Item in the same condition as when delivered to Lessee hereunder, ordinary wear and tear excepted, and in good operating condition."); see also Exhibit D to Agreement §§ 1-2 ("On the expiration or earlier termination of the Term, the Aircraft shall be accepted by Lessor at the Delivery Location . . . . The Aircraft shall be in the same working order, condition, and appearance as when received pursuant to this Lease (reasonable wear from normal operations excepted.").

Finally, GATX has provided sufficient evidentiary support for its claimed damages resulting from Aero's breach of the Agreement.  Under New York law, a successful plaintiff in a breach of contract action is entitled to damages in the "amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract." Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 495 (2d Cir. 1995) (citations omitted); accord Trans Atl. Airlines, Inc. v. Kambi Travel Int'l, 2006 WL 1317024, at *1 (S.D.N.Y. May 12, 2006).  "[U]nder New York law, where the breach of contract was a failure to pay money, the plaintiff is entitled to recover the unpaid amount due under the contract plus interest."  House of

Diamonds v. Borgioni, LLC, 737 F. Supp. 2d 162, 172 (S.D.N.Y. 2010) (citing Scavenger, Inc. v. GT Interactive Software Corp., 289 A.D.2d 58 (1st Dep't 2001)).  Additionally, it is well-settled that "a party injured by a breach [of contract] is entitled to recover damages that are the 'natural and probable consequence of the breach.'"  APL Co. PTE Ltd. v. Blue Water Shipping U.S. Inc., 592 F.3d 108, 111 (2d Cir. 2010) (quoting Bi–Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y., 10 N.Y.3d 187, 192 (2008)).

In support of its claimed damages, GATX has submitted a sworn declaration from GATX's Vice President of Equipment Management, Eric Livingston, who is "responsible for managing GATX's portfolio of equipment leases and developing new business opportunities." Livingston Decl. ¶ 2.  Livingston's declaration attaches a summary of damages that he asserts is "[t]o the best of [his] knowledge . . . a true and accurate accounting of GATX's damages caused by Aero Jet's breach of the Lease."  Id. ¶ 15; see Summary of Aero Jet Damages (annexed as Ex. 2 to Livingston Decl.) ("Summary").

The Summary reflects that GATX lost $175,000 for "seven months rent" from December 2012 to July 2013.  This amount is properly awarded to GATX because it represents the consideration that GATX would have received had Aero fulfilled its obligations under the Agreement.  See Summary (calculating "Seven Months Rent" as $175,000); Exhibit C to Agreement (noting that "Basic Rent" is "$25,000 each month, monthly in advance").[3]

---

[3] The Court notes that this amount includes both rent that had already accrued at the time of Aero's default and future rent that would have accrued in the remaining months of the lease term.  While an aggrieved party typically has a duty to take reasonable measures to mitigate its damages, Air Et Chaleur, S.A. v. Janeway, 757 F.2d 489, 494 (2d Cir. 1985), we need not consider the question of mitigation here because Aero "bore the burden of introducing evidence to prove that [GATX] could have lessened [its] damages," and Aero has failed to file any responsive submissions with regard to the motion for default judgment or the instant inquest, id.; see also Nat'l Audubon Soc., Inc. v. Sonopia Corp., 2010 WL 3911261, at *2 n.2 (S.D.N.Y.

Additionally, GATX should be granted damages for the $353,688.27 of "Repossession and Repair Costs" as reflected on the Summary because, as previously mentioned, Aero was required under the Agreement to pay for the expense of "repair[ing]" the Aircraft "so as to keep [it] in the same condition as when delivered . . . and in good operating condition."  Agreement § 6.6(b). Thus, because Aero failed to properly maintain the condition of the Aircraft or even to "repair the damage resulting form the apparent lightning strike," Am. Compl. ¶ 20, GATX should be reimbursed for the costs of these repairs.  Similarly, GATX should be allowed to recover costs incurred in furtherance of its repossession of the Aircraft, as Aero was explicitly made liable for such costs under the terms of the Agreement.  See Agreement § 16.2 ("Lessee shall be liable for any and all . . . costs and expenses incurred by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies with respect thereto, including all costs and expenses incurred in connection with the return of any Item or Equipment."); see also id. § 14.1 ("Upon the expiration or earlier termination of this Lease, Lessee shall return the Aircraft to Lessor.").

GATX can recover the $81,840 claimed for the items identified on the Summary as Return Inspections, Overdue Inspections, and Correction & Repair Items, because Aero was responsible for such costs under the Agreement.  See Exhibit D to Agreement § 4 ("Prior to the return of the Aircraft . . . Lessor shall carry out, at Lessee's expense, a redelivery inspection in like kind and manner to the delivery inspection performed by Lessee upon the initial delivery to Lessee under the Lease, including but not limited to a functional acceptance flight, at Lessee's

Sept. 1, 2010) (for purposes of determining damages in an inquest, court "need not consider mitigation in this case because [the defendant] has waived the defense by failing to answer the complaint").  In any event, it is reasonable to infer that GATX could not have mitigated its losses because the Aircraft had suffered significant damage and thus required repairs before it could be leased to other parties.  See Am. Compl. ¶¶ 14, 21.

expense, of the Aircraft.").  Aero is also responsible under the Agreement for reimbursing GATX for the $55,560 in "Airframe Reserves (Hourly)" and the $24,600 in "CAMP Maintenance Program (24 Months)" expenses.  See Exhibit E to Agreement ("Lessee shall pay Lessor the Airframe Maintenance Amount in arrears for each Flight Hour elapsed during the immediately preceding month."); Agreement § 6.6(a) ("Lessee, at its own cost and expense, shall . . . [s]ubscribe to and keep current the Maintenance and Tracking Programs.").[4]  Finally, GATX should be awarded $140,400 for the "Reduced Sales Price/Reduced Value of Aircraft," which consists of the costs incurred in repairing the Aircraft after GATX sold it to West Star Aviation.  See Summary.  The Court finds that this expense is appropriately awarded to GATX as such damages are proximately caused by Aero's breach of its duty to return the Aircraft "in the same working order, condition and appearance as when received."  Exhibit D to Agreement § 2; see also Agreement § 6.6(b).

In total, GATX should be awarded $658,393.39 in compensatory damages.  This amount properly reflects a deduction from GATX's claimed damages of $99,580 for Aero's security deposit and $48,514.88 for an insurance settlement.  See Summary.

---

[4] The Agreement explains that the "Maintenance and Tracking Programs" include the "CAMP Systems International maintenance tracking program."  See Schedule 1 to Agreement.  While we believe that the $24,600 amount attributable to this category is compensable as damages, GATX has not in fact included it in its requested damages as reflected in the calculations provided in the Summary.  It may be that GATX simply made an arithmetic error in calculating its subtotal for "Aerojet Outstanding Payments Due Under Lease" inasmuch as the numbers on the chart seemingly reflect that the "Total Due Under Lease" should be $155,580.00, rather than $130,980.00.  But because this apparent error does not favor GATX and because GATX has consistently relied on the lesser amount in calculating its total damages, see Proposed Findings of Fact and Conclusions of Law ¶ 21, the Court uses the lesser amount in calculating GATX's award.

2.      Prejudgment Interest

GATX also seeks prejudgment interest of 9% pursuant to N.Y. C.P.L.R. §§ 5001, et seq.
See Proposed Findings of Fact and Conclusions of Law ¶¶ 22-23.  In a diversity case such as this
one, "state law governs the award of prejudgment interest."  Schipani v. McLeod, 541 F.3d 158,
164 (2d Cir. 2008) (citing Baker v. Dorfman, 239 F.3d 415, 425 (2d Cir. 2000)).  New York law
provides that prejudgment interest of 9% is to be awarded for claims arising from "a breach of
performance of a contract."  N.Y. C.P.L.R. §§ 5001(a), 5004; see, e.g., Fleisher v. Phoenix Life
Ins. Co., 2014 WL 550391, at *11 (S.D.N.Y. Feb. 7, 2014) ("Under New York law, any 'sum
awarded' in a breach of contract action accrues interest at 9% — the statutory prejudgment
interest rate.").

The starting date from which a court computes interest is "the earliest ascertainable date
the cause of action existed . . . ."  N.Y. C.P.L.R. § 5001(b).  However, "[w]here such damages
were incurred at various times, interest shall be computed upon each item from the date it was
incurred or upon all of the damages from a single reasonable intermediate date."  Id.; see also
Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 91 (2d Cir. 1998) ("New York law leaves to the
discretion of the court the choice of whether to calculate prejudgment interest based upon the
date when damages were incurred or 'a single reasonable intermediate date.'") (quoting 155
Henry Owners Corp. v. Lovlyn Realty Co., 231 A.D.2d 559, 560-61 (2d Dep't 1996)).

Here, it is not clear when many of the claimed damages were incurred, as GATX has not
specified the dates on which it made the necessary repairs to the Aircraft.  Thus, the Court will
compute prejudgment interest upon all of the damages from a single reasonable intermediate
date.  GATX has proposed June 1, 2013, as such a date, as that is the date "on which Aero Jet's
breach was ascertained in full by GATX."  Proposed Findings of Fact and Conclusions of Law

10

¶ 22.  Aero has not challenged GATX's proposal of June 1, 2013, and as it occurs long after the date on which lease payments stopped, in December 2012, we will accept June 1, 2013, as a reasonable intermediate date.  Thus, GATX should be awarded prejudgment interest of 9% per annum beginning on June 1, 2013.  The Court calculates this amount to be $162.34 per day ($658,393.39 /365 x .09).[5]

In addition, GATX seeks post-judgment interest pursuant to 28 U.S.C. § 1961(a) commencing from the date of judgment.  See id. ¶ 36.  Such interest accrues automatically by operation of law, see 28 U.S.C. § 1961(a), and thus it is not necessary to make reference to it in the judgment, see Miller v. Artistic Cleaners, 153 F.3d 781, 785 (7th Cir. 1998); Christian v. Joseph, 15 F.3d 296, 298 (3d Cir. 1994).

### 3.  Attorney's Fees and Costs

GATX asks the Court to award it $43,855.70 in litigation costs, expenses, and attorney's fees under Section 16.2 of the Agreement.  See Proposed Findings of Fact and Conclusions of Law ¶¶ 19, 24.  Section 16.2 states, "Lessee shall be liable for . . . all reasonable legal fees and other costs and expenses incurred by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies with respect thereto . . . ."  Agreement § 16.2.

"In New York, courts should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is unmistakably clear from the language of the contract."  Bank of N.Y. Trust Co., N.A. v. Franklin Advisers, Inc., 726 F.3d 269, 283 (2d Cir. 2013) (internal quotation marks and citation omitted).  Here, the Agreement

---

[5] The Court notes that GATX has not requested prejudgment interest on its award for attorney's fees and legal expenses.  See Proposed Findings of Fact and Conclusions of Law ¶¶ 22-23, 37.

unambiguously requires Aero to reimburse GATX for its attorney's fees and other costs "incurred by reason of the occurrence of any Event of Default," such as Aero's failure to pay rent.  Accordingly, because in this case GATX was exercising its contractual remedies under the Agreement in response to Aero's contractual breaches, the Court finds that GATX can recover its reasonable attorney's fees and other legal expenses.

The Second Circuit has held that "the rule in New York is that when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable."  Diamond D Enters. USA, Inc. v. Steinsvaag,  979 F.2d 14, 19 (2d Cir. 1992) (internal quotation marks and citation omitted); accord McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993) (in contractual claim for attorney's fees, the court "is to determine a reasonable amount of fees").  GATX has provided summaries of contemporaneous time records listing the hours spent by its attorneys on specific case-related tasks as well as the hourly rates charged by those attorneys.  See Time Records for Gekas Law LLP (annexed as Ex. 1 to Gekas Decl.) ("Gekas Rec."); Time Records for Arnstein & Lehr LLP (annexed as Ex. 2 to Gekas Decl.); Time Records for Edwards Wildman Palmer LLP (annexed as Ex. 1 to Cizmarik Decl.) ("Edward Rec."); Time Records for August & Debouzy (annexed as Ex. 1 to Haeri Decl.) ("August Rec.").  These records also list the various costs and expenses incurred by GATX in litigating the case.  The Court has reviewed these time records, as well as the specific amounts listed therein, and finds that the number of hours expended by the attorneys was reasonable and that the hourly rates of the attorneys, ranging from $230 to €525, are reasonable.  With respect to costs, the records properly include items such as subpoena fees, delivery services, and filing fees.  See Gekas Rec. at 1; Edwards

12

Rec. at 1, 3.  One item of costs, however, is unexplained: a charge of €850.20 for "professional expenses."  See August Rec. at 2.  Accordingly, no award should be made for this amount.

The total amount properly awarded for fees and expenses is therefore $22,683.79 plus €14,603.75.  Under the "breach-day rule," which is typically followed by New York courts, see Middle East Banking Co. v. State St. Bank Int'l, 821 F.2d 897, 902–03 (2d Cir. 1987); Behzadi v. David & Son Oriental Antique Rugs Corp., 2013 WL 5870343, at *3 (S.D.N.Y. Oct. 31, 2013), a court converts foreign currency into United States dollars at the rate prevailing on the date of the breach.  This rule need not be slavishly followed, however, see Teca-Print A.G. v. Amacoil Mach., Inc., 138 Misc. 2d 777, 784 (Sup. Ct. 1988), and in this case it makes little sense to follow it as the attorney's fees at issue were incurred only after the breach occurred.  Instead, we will use the midpoint date for the period in which the only law firm that charged in Euros provided legal services to GATX:  October 15, 2013.  See August Rec. at 1 (noting that August & Debouzy's billing period was from June 1, 2013, to February 28, 2014).  On that date, the exchange rate was $1.3494 dollars to the Euro.  See Foreign Exchange Rates H.10 Release, Board of Governors of the Federal Reserve System (Oct. 21, 2013) (http://www.federalreserve.gov/releases/h10/20131021/).  Accordingly, the €14,603.75 awarded is equivalent to $19,706.30, and the total amount of attorney's fees and costs to be awarded is $42,390.09.

III.    CONCLUSION

For the foregoing reasons, GATX should be awarded a judgment against Aero in the amount of $700,783.48 plus prejudgment interest accruing at the rate of $162.34 per day from June 1, 2013, until the date judgment is entered by the Clerk of this Court.

13

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a),

(b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. John G. Koeltl at 500 Pearl Street, New York, New York

10007. Any request for an extension of time to file objections must be directed to Judge Koeltl.

If a party fails to file timely objections, that party will not be permitted to raise any objections to

this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner

& Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84,

92 (2d Cir. 2010).

Dated: July 21, 2014
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge


Copy mailed to:

S.A.R.L. Aero Jet Corporate
58 allee Grands Taillis
villa
69380 DOMMARTIN
France

14